15 F.3d 1159
 304 U.S.App.D.C. 428
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
GODDARD ENGINEERS, SCIENTISTS AND TECHNICIANS ASSOCIATION
(GESTA), et al., Appellant,
v.
NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, Appellee.
 No. 92-5246.
 United States Court of Appeals, District of Columbia Circuit.
 Jan. 3, 1994.
 
 Before: EDWARDS, and SILBERMAN, Circuit Judges, and OAKES, Circuit Judge, United States Court of Appeals for the Second Circuit.*
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal from an award of summary judgment entered by the United States District Court for the District of Columbia in favor of the National Aeronautics and Space Administration (NASA) and was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED that the district court's grant of NASA's motion for summary judgment be affirmed in part and reversed and remanded in part for the reasons set forth in the accompanying memorandum.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 The Plaintiffs/Appellants, Goddard Engineers, Scientists and Technicians Association ("GESTA"), and The Lewis Engineers and Scientists Association ("LESA") (collectively the "Associations") are representatives of NASA engineers, scientists, and technicians. The Associations[1] appeal from an order of the United States District Court for the District of Columbia, the Honorable Thomas Penfield Jackson, Judge, dated February 14, 1992, granting NASA's renewed motion for summary judgment thereby dismissing the Associations' second amended complaint. The Associations' complaint challenged NASA's employee drug testing program, which provides for (1) random drug testing of employees in positions requiring recurring access to classified information, or in which an error or mishap could cause substantial harm to persons or property (such employees hold "Testing Designated Positions" or "TDPs"); (2) "reasonable suspicion" testing of any employee reasonably suspected of drug use; and (3) post-accident testing of any employee who causes or contributes to a serious accident. The Associations alleged that the NASA drug testing violates their members' Fourth Amendment right to be free from unreasonable searches and seizures.[2]
 
 
 5
 On appeal from an order granting summary judgment, we review the record de novo in the light most favorable to the appellant to determine whether there is a genuine issue of material fact. See Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 284 (D.C.Cir.1993); Connors v. Incoal, Inc., 995 F.2d 245, 252 (D.C.Cir.1993); Sherwood v. Washington Post, 871 F.2d 1144, 1145 (D.C.Cir.1989) (per curiam). Upon full consideration of the issues presented to this Court, we affirm in part and reverse and remand in part the district court's grant of NASA's motion for summary judgment.
 
 
 6
 It is well established that government-compelled urinalysis for the purpose of drug testing is a search subject to Fourth Amendment protection and may be upheld only if reasonable. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 617 (1989); National Treasury Employees Union v. Von Raab, 489 U.S. 656, 665 (1989). A variety of factors can establish the reasonableness of a random drug testing program including: (1) "the 'limited' intrusions occasioned by the testing procedures," (2) "the diminished expectation of privacy that attaches to employment in an 'industry that is regulated pervasively to ensure safety,' " and (3) "compelling" or "surpassing" government interest. See National Fed'n of Fed. Employees v. Cheney, 884 F.2d 603, 608-09 (D.C.Cir.1989), cert. denied, 493 U.S. 1056 (1990) (citing Skinner, 489 U.S. at 624-33, 109 S.Ct. at 1417-22); Harmon v. Thornburgh, 878 F.2d 484, 489 (D.C.Cir.1989) ("the random nature of [a drug] testing plan is a relevant consideration.... We do not believe, however, that this aspect of the program requires us to undertake a fundamentally different analysis from that pursued by the Supreme Court in Von Raab").
 
 
 7
 Applying the legal standard for random drug testing to the facts presented to us on appeal, affidavits submitted below by appellants create material issues of disputed fact as to the safety-sensitive nature of the duties performed by wind tunnel operators, and the series 801, 802, 854, 855, and 861 engineers who do not have secret security clearance. Compare Consolidated Affidavit of Ann P. Bradley, Sec. 22(b) at 18-22 (series 801), Sec. 22(c) (series 802), Sec. 22(e) at 24-25 (series 854 and 855), Sec. 22(g) at 27-29 (series 861), and Sec. 22(i) at 30-32 (series 1330), with Affidavit of Robert Gordon, p 4 (disputing Bradley's allegations regarding series 801), p 5 (disputing Bradley's allegations regarding the authority of series 854 and 855 employees to make "real decisions"); Affidavit of Wesley Darbro, paragraphs 5-8 (disputing Bradley's allegations regarding 854 and 855); Affidavit of Richard Woollett, p 2 (disputing Bradley's allegations regarding series 802); Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, October 25, 1991 (disputing allegations regarding wind tunnel employees; and series 801, 802, 854, 855, and 861 engineers). For instance, Robert Gordon's affidavit states that none of the foregoing groups of engineers make individual "real-time" decisions, but that supervisors have final decisional responsibility. See Appellees' Supplemental Appendix at 132-33. The other affidavits also dispute the authority of the foregoing groups to make individual "real-time" decisions as well as the safety-sensitive nature of the duties performed by these employees.
 
 
 8
 On the other hand, appellants have not demonstrated the existence of any disputed issues of material fact as to any other category of employee designated for random testing. Nor are there disputed issues concerning the propriety of reasonable suspicion testing or post-accident testing. The district court's order with respect to these aspects of NASA's drug testing plan therefore is affirmed.
 
 
 9
 "[O]ur responsibility is to remand" where the factual record does not clearly reveal the nature of the duties performed by employees subject to random testing. See Cheney, 884 F.2d at 612 (citing Von Raab, 489 U.S. at 678, 109 S.Ct. at 1397 (1989)). We therefore remand as to those categories specified above and direct the district court to permit such further discovery as necessary to develop an adequate factual record sufficient for the district court to determine whether NASA's random drug testing of its employees is reasonable.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d)
 
 
 [1]
 The Marshall Engineers and Scientists Association was a plaintiff in this case, but has failed to file a notice of appeal. The Appellants' brief names the NASA Headquarters Professional Association as another appellant, but there is no record of this Association either as a plaintiff or as an appellant
 
 
 [2]
 At the same time, the Associations moved for a preliminary injunction restraining NASA from testing their members. Following a March 20, 1990 hearing, Judge Jackson issued an order denying the Associations' motion. On November 13, 1990, a panel of this Court (Silberman, Henderson, and Randolph) affirmed the order of the lower court in an unpublished order and memorandum. See Goddard Engineers Ass'n v. NASA, 917 F.2d 1313 (D.C.Cir.1990)